**MID–ATLANTIC DIESEL,
INC., Plaintiff,**

v.

**Lloyd H. FULCHER and Grayden L. Fulcher, in personam, and the U.S. Oil Screw Miss Marsha, Her Engines, Tackle, Apparel, etc., in rem, Defendants.**

**No. 84–61–Civ–4–A.**

United States District Court,
E.D. North Carolina,
New Bern Division.

March 13, 1985.

Stevenson L. Weeks, Wheatly, Wheatly & Nobles, P.A., Beaufort, N.C., for plaintiff.

Richard F. Gordon, Morehead City, N.C., for defendants.

## ORDER

LARKINS, Senior District Judge:

This court having heard the above named action, in admiralty, during its regular term of court, conducted from February 4–7, 1985, now makes the following findings. Plaintiff filed suit invoking this court's admiralty and maritime jurisdiction against the vessel MISS MARSHA, *in rem,* and its owners Lloyd H. Fulcher and Grayden L. Fulcher, *in personam.* Pursuant to a warrant of arrest said vessel was seized, and the defendants by posting a cash bond of twelve thousand dollars ($12,000.00) effected its release.

Plaintiff claims that defendants owe the corporation $10,342.77 for materials and labor furnished the vessel in connection with its being outfitted for fishing, clam kicking, and shrimping.

Plaintiff contends that it entered into the following contracts with the defendants: first, that the plaintiff corporation would rebuild and convert to marine use a used diesel engine for which work the defendants agreed to pay for the price of parts plus the cost of labor at the rate of twenty dollars ($20.00) per hour; and second, that the plaintiff corporation would install fuel tanks and a keel cooler, construct and install a mast, boom, outriggers, and chain plates, install a winch and fabricate its power train, and finally, obtain and install a wash down pump, for which work the defendants would pay the price of parts and materials furnished plus labor charges at the rate of twenty-two dollars and fifty cents ($22.50) per hour.

The defendants contend that a contract was formed in which the plaintiff agreed to overhaul the diesel engine and install a keel cooler, a fuel system, a steering system, an exhaust system and engine instrumentation for the fixed sum of eight thousand dollars ($8,000.00). Defendants contend that they later agreed to pay an additional seven hundred dollars ($700.00). This work, allegedly, was to be performed by June 1, 1983, but the engine was not installed and running until November, 1983. Further, defendants contend that the plaintiff agreed to construct and install a mast, booms, and chainplates and to install a winch and wash down pump for an amount not to exceed twenty-five hundred dollars ($2,500.00) for parts. No specific labor charge was determined other than the plaintiff assured defendants that it would not be much. This work was to be completed in time for the claim kicking season of 1983–84. Because this work was not completed by June of 1984, the defendants removed the vessel from plaintiff's possession.

Both parties agree that defendants have satisfied $10,821.22 of their indebtedness. However, plaintiff contends that an outstanding balance of $10,342.77 is owed while the defendants concede that only $1,167.02 is owed.

Defendants have filed two counterclaims: first, a one thousand dollar ($1,000.00) claim for damage to the vessel which occurred while it was moored during the time which plaintiff was to install the rigging and winch; and second, a claim for damages stemming from loss of use.

■ At trial, both parties insisted that a contract was formed but disagreed as to its contents (variable versus fixed costs). From the evidence, it is clear that no contract was formed, for there was not a meeting of the minds as to the necessary and essential terms. Accordingly, any recovery by the plaintiff must stem from the equitable principles of quantum meruit, which allows one to recover the reasonable value of his services and materials furnished when an express contract fails.

The plaintiff corporation presented evidence which supports a gross recovery from defendants of $16,957.00. This sum represents the reasonable value of all parts, materials, labor, and services which plaintiff provided the defendants and the vessel MISS MARSHA. Upon payment of the outstanding balance owed, plaintiff is directed to surrender possession of the winch, wash down pump, and rigging to the defendants. Upon releasing these items, plaintiff is relieved of all obligations to defendants, including installation.

■ Defendants are entitled to recover the sum of two hundred dollars ($200.00) from the plaintiff for damage to the vessel. The evidence discloses that the plaintiff corporation failed to exercise an ordinary level of care in protecting the vessel from damage while being moored for the corporation's commercial benefit.

■. No recovery for loss of use is justified by the evidence adduced at trial. Although evidence discloses that the plaintiff was aware of the intended use of the vessel, any recovery is barred since any award of damages would be based on speculation. Defendants' business of clamming, fishing, and shrimping with the MISS MARSHA is a new one. Whether or not a new venture will be commercially successful is something that this court is unable to determine with certainty. The problem of predicting future profits is magnified, in this case, by the inherent risks in the business itself—successfully harvesting the fruits of the sound during a favorable market. For these reasons, damages for loss of use are denied.

Finally, both sides are to pay their own costs of this action, including attorney fees. Prejudgment interest is also denied.

Accordingly, for the foregoing reasons, it is hereby ORDERED that defendants pay the plaintiff corporation the sum of $5,935.78 ($16,957.00−($10,821.22 + $200.00)).

SO ORDERED.